**Anna A. MOTLEY, Appellant,**

v.

**Willie R. VINCENT, Appellee.**

Court of Appeals of Kentucky.

March 26, 1965.

G. D. Milliken, Jr., Milliken & Milliken, Bowling Green, for appellant.

E. R. Gregory, Harold D. Ricketts, Bowling Green, for appellee.

DAVIS, Commissioner.

This appeal presents questions arising out of mutual accounts between appellant and appellee, wherein appellant maintains that appellee has made incorrect charges and failed to allow certain due credits. The trial court referred the matter to the master commissioner for hearing and report. The master commissioner conducted an extensive hearing and made his report which rejected the claims of appellant. Thereupon the appellant filed exceptions to the report of the master commissioner. The trial judge then reviewed the record and report of the commissioner and overruled appellant's exceptions. The commissioner's report was adopted by the trial court, and judgment went accordingly. CR 53.04(2).

The appellee owns and operates a retail building materials outlet, from which he dispenses lumber and various other merchandise used for construction. Appellant has for several years engaged in the work of planning and building residences for ultimate sale. In the course of her activities in this pursuit, appellant has been a long-time customer of the appellee. Appellant bought materials from appellee for twenty-four residence construction jobs, upon which she was working in her individual capacity.

Additionally, the parties verbally agreed to undertake a joint venture looking toward the construction of three residences. In general, the verbal agreement as to these three houses provided that appel-

lant would furnish the plans and supervise the work for their construction; that appellee would furnish the requisite materials, at regular prices, and when the houses were sold there would be an equal division of the net profits. Appellee was to arrange for the financing of the three houses during construction.

As the various houses were completed, whether the houses built individually by appellant or the joint-venture houses, appellant and appellee conferred and went over their accounting. Appellee testified that at such times he would furnish appellant duplicates of the various invoices in support of the charges as to a particular project. Appellant stated that only a portion of the invoices were made available to her, so that she had no way to accurately compute the proper charges.

According to appellee's proof, the charges against the account of appellant always exceeded the credits due, so that appellee "quit doing business" with appellant in June, 1961, when the net balance due from appellant to appellee was $5,116.74. The litigants had been in discussions just prior to June 24, 1961, concerning the status of the account; the statutory time for perfection of a materialman's lien on a house was about to expire, and appellee was pressing for payment. Appellant, meanwhile, was expressing the view that a proper audit of the accounts would reveal that she had been overcharged and underceredited.

On June 24, 1961, appellant signed a statement of account, written on the bill head of the appellee which (omitting the caption) recites:

"Bal on note             385.56
Lansdale House        4,693.54
Johnson St                 37.64
         Total net       5,116.74
(signed)   Mrs. William Motley
         June 24, 1961."

For the appellee it is insisted that this document was a recognition of the correct standing of the account; for appellant it is urged that the paper merely reflects that the debits against appellant for the items shown are as shown, and that it was understood between the parties that the true state of their mutual accounts was to be ascertained by an actual audit.

On July 17, 1961, the appellee instituted this suit seeking to recover from appellant the three items listed above, together with interest thereon and costs. Ancillary relief was sought with respect to enforcement of a lien claim. Appellant filed answer, counterclaim and amendments thereto in which she denied any indebtedness to appellee and asserted that appellee should pay her the sum of $31,997.15. Appellant prayed that the matter be referred to a certified public accountant for report of the true status of the accounts. Pursuant to the terms of an agreed order the trial court did refer the case to a certified public accountant. The agreed order provided that the fee of the accountant should be taxed as costs and ultimately paid as directed by the court. The accountant declined to serve until the parties posted bonds securing his estimated fee for services; the appellant declined to execute bond, so the trial court referred the matter to the master commissioner.

Appellant's assertions of incorrect and improper charges may be said to be multitudinous in the testimony, but in brief these are narrowed to three specific items, plus one "catch-all" attack.

The first point relates to a check of $1,746.79, which appellant gave appellee on June 13, 1959. This check purports to serve as payment for materials used in the construction of a house at 520 Claremoor Drive, Bowling Green. (This was not one of the joint-venture houses.) The only identifiable credit which appellant received for the check is the sum of $346.79; thus, she contends that she is clearly entitled to a credit of an additional sum of $1,400. To counter this, the appellee showed that the accounting, house by house, was actu-

ally on a basis of "robbing Peter to pay Paul." Receipts from the sale of one house would be used to pay for materials furnished for another—so that appellant remained constantly in arrears on the running account. Admittedly, the account books are "tangled"—but as appellee expressed it on cross-examination:

"Q369. You know of anywhere that anybody could get a set of books in any worse or more confused state than you have got yours?

"A. Well now on—(interrupted).

"Q370. That is with Mrs. Motley.

"A. We have been keeping these books for thirty-five years but now if they are tangled up it is because she got them tangled.

"Q371. You are the one—(interrupted).

"A. Borrowing on one house and paying on another clear through there for about five years."

The master commissioner found, and the trial court confirmed the finding upon his own independent examination of the record, that the evidence of the appellee "adequately explained the records * * * as to the errors claimed * * * and further showed that the errors made were * * * about even and merely mathematical bookkeeping errors." We hold that this finding is adequately supported by the record.

The second substantial claim relates to charges of interest and loan service charges incurred by appellee incident to construction loans on the three joint-venture houses. These were charged against gross receipts for the three houses in the total sum of $2,338.67. Appellant insists that the verbal agreement was that appellee would advance the capital, hence he should not be permitted to include any interest or serv-

ice charge. The appellee denied that the agreement so envisioned the matter. The trial court chose to believe appellee, and we cannot observe any particular wherein he was required to believe appellant on this point.

The third main claim is that appellee "overcharged" appellant for the materials furnished in the various houses. This claim is based on appellant's assertion, which she supported by her own and other evidence, that residential construction of this type should, and normally would, cost not more than $3.50 per square foot. Appellant then undertook to show that the materials in question showed that these houses cost more, or an average of $4.42 per square foot. Two difficulties with this view are observed; the appellant was not able to show an accurate computation of the number of square feet involved—and the verbal agreement did not have anything to do with square foot cost anyway. Moreover, appellee caused an actual survey to be made of the houses and produced calculations reflecting that the average cost was actually less than $3.50 per square foot. The trial court accepted that testimony, and had a right to.

In this same general category, the appellant makes complaint as to the inaccuracy of "settlements" made on the three joint-venture houses. Yet, these settlements were made before appellant signed the document of June 24, 1961. The appellee's evidence indicates that appellant never made any complaint about the accuracy of any of the accounting until appellee insisted on a final settlement in 1961, followed by appellee's filing of a materialman's lien claim.

In a fourth and "catch-all" argument, the appellant calls attention to certain admitted bookkeeping errors by the appellee. Claimed improper charges for sewer connections and certain other relatively minor items are noted. We have pointed out that the trial court and master commissioner concluded that these errors about balanced.

They occurred before the appellant's signing of the June 24, 1961, recognition of "net balance due." Upon the entire record we are not persuaded that the finding of the trial court was clearly erroneous. Indeed, the preponderance of the evidence, in our view, favors the appellee. Under these circumstances, the findings and judgment of the trial court will not be disturbed. CR 52.01.

The judgment is affirmed.